1
2
3
4
5

George H. Brunt, CA Bar No. 223457
LEE & HAYES, P.C.
601 W. Riverside Avenue, Suite 1400
Spokane, WA  99201
Phone: (509) 324-9256
Fax: (509) 323-8979
GeorgeB@leehayes.com

6
7

*Attorney for Plaintiffs Cinematix, LLC, AP International,*
  *Home Screen Entertainment, FZE, Home Screen*
  *Entertainment, PTE. Ltd.*

8
9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17
18
19
20
21
22

| | |
|---|---|
| CINEMATIX, LLC, a Washington limited liability company; AP INTERNATIONAL, an Indian company; HOME SCREEN ENTERTAINMENT, FZE, a United Arab Emirates limited liability company; HOME SCREEN ENTERTAINMENT, PTE. LTD., an Australian privately held limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> EINTHUSAN, a Canadian company; LOTUS FIVE STAR, LTD., a Canadian company d/b/a Einthusan; LEO INDIA FILMS LTD., a Canadian company d/b/a/ Einthusan; ARUN SHANMUGANATHAN, an individual; and JOHN DOES 1-10 <br><br> Defendants. | No. 3:19-cv-2749-EMC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS EINTHUSAN, LOTUS FIVE STAR, LTD, AND ARUN SHANMUGANATHAN'S AMENDED NOTICE OF SPECIAL APPEARANCE AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2), INSUFFICIENT SERVICE OF PROCESS PURSUANT TO FRCP 12(b)(5), AND *FORUM NON CONVENIENS*** <br><br> Hearing Date: November 7, 2019 <br> Time: 9:00 a.m. <br> Ctrm: 5, 17th Floor. <br> Before the Hon. Edward M. Chen <br><br> Trial Date: None set |

23
24
25
26
27
28

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF THE ISSUES .......................................................................1

III. BRIEF STATEMENT OF FACTS ...................................................................1

IV. MEMORANDUM OF POINTS AND AUTHORITIES .................................3

       A.    This Court has personal jurisdiction over Defendants because they have expressly consented to personal jurisdiction and because specific personal jurisdiction exists. ...........................................................................................3

             1.     Legal Standard ...................................................................................3

             2.     Defendants explicitly consented to personal jurisdiction in this District. ..............................................................................................4

             3.     Defendants are subject to specific personal jurisdiction. ..................6

                      a.     Purposeful Availment and Direction ......................................7

                      b.     Arising out of Forum-Related Activities ..............................10

                      c.     Exercising specific jurisdiction over Defendants is reasonable. ...........................................................................11

       B.    Defendants were properly and sufficiently served pursuant to the Federal Rules of Civil Procedure, the Hague Convention, and this Court's Order ...14

       C.    This forum is proper because the facts, laws, and evidence all strongly favor retention in this District. .................................................................................17

             1.     Defendants failed to show an adequate alternative forum ...............18

              2.     Balance of Public and Private Factors Strongly Weighs in Plaintiffs' Favor. .............................................................................................19

V. CONCLUSION ................................................................................................22

1

2

## TABLE OF AUTHORITIES

3

**Cases**                                                                                    **Page(s)**

4
*Alpine View Company Limited v. Atlas Copco AB*,
   205 F.3d 208 (5th Cir. 2000) ................................................................................ 18

5

6
*Aquawood LLC v. Wide Eyes Marketing*,
   No. CV 11-03046 SJO (AGRx), 2011 U.S. Dist. Lexis 164395, at *9

7
   (C.D. Cal. Oct. 31, 2011)........................................................................................ 16

8
*AT&T v. Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir. 1996) ..................................................................................... 3

9

10
*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ................................................................................. 11

11

12
*Bank Julius Baer & Co. Ltd. v. WikiLeaks*,
   No. C 08-00824 JSW, 2008 U.S. Dist. LEXIS 14758 (N.D. Cal. Feb. 13, 2008).................... 17

13
*Boston Telecommunications Group, Inc. v. Wood*,
   588 F.3d 1201 (9th Cir. 2009) ......................................................................... 18, 19

14

15
*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124 (9th Cir. 2010) ................................................................................. 7

16
*Bright Solutions for Dyslexia v. Lee*,
   No. 15-cv-01618-JSC, 2017 U.S. Dist. LEXIS 72242 (N.D. Cal. May 11, 2017).................... 16

17

18
*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) ................................................................................. 15

19

20
*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ......................................................................................... 6, 10

21

22
*Calder v. Jones*,
   465 U.S. 783 (1984) ................................................................................................ 7

23
*Carijano v. Occidental Petroleum Corp.*,
   643 F.3d 1216 (9th Cir. 2011) ............................................................................... 18

24

25
*Cheng v. Boeing Co.*,
   708 F.2d 1406 (9th Cir. 2001) ............................................................................... 18

26
*Columbia Pictures Television v Krypton Broadcasting of Birmingham, Inc*,
   106 F.3d 284 (9th Cir. 1997) ................................................................................... 7

27

28
*Core-Vent Corp. v. Nobel Industries AB*,
   11 F.3d 1482 (9th Cir. 1993) ........................................................................... 11, 13

*Craigslist, Inc. v. Troopal Strategies, Inc.*,
No. C 09-04741, 2010 U.S. Dist. LEXIS 144409 (N.D. Cal. Nov. 24, 2010) ......................... 17

*Cybernet Entertainment LLC v. IG Media Inc*.,
No. CV 12-01101-PHX-SRB, 2012 U.S. Dist. LEXIS 192640 (D. Ariz. Nov.
30, 2012).................................................................................................................................. 8

*CYBERsitter, LLC v. People's Republic of China*,
805 F. Supp. 2d 958, 965-66 (C.D. Cal. 2011)....................................................................... 19

*Datatech Enterprises LLC v. FF Magnat Ltd.*,
No. C 12-04500 CRB, 2012 U.S. Dist. LEXIS 131711, (N.D. Cal. Sept. 14,
2012).................................................................................................................................. 7, 10

*Dole Food Co., Inc. v. Watts*,
303 F.3d 1104 (9th Cir. 2002).......................................................................................... 17, 18

*Employee Painters' Trust v. Ethan Enterprises, Inc.*,
480 F.3d 993 (9th Cir. 2007)................................................................................................. 14

*Facebook, Inc. v. Banana Ads, LLC*,
No. C-11-3619 YGR, 2012 U.S. Dist. LEXIS 42160 (N.D. Cal. Mar. 27, 2012).................... 17

*Fields v. Sedgwick Associated Risks, Ltd.*,
796 F.2d 299 (9th Cir. 1986) ................................................................................................... 3

*Goes International, AB v. Dodur Ltd.*,
No. 14-cv-5666 LB, 2015 U.S. Dist. LEXIS 50394 (N.D. Cal. Apr. 16, 2015) ...................... 16

*GT Sec., Inc. v. Klastech GmbH*,
No. C-13-03090 JCS, 2014 U.S. Dist. LEXIS 88237 (N.D. Cal. June 27, 2014).................... 11

*Gucci America, Inc. v. Huoqing*,
No. C-09-05969 JCS, 2011 U.S. Dist. LEXIS 783 (N.D. Cal. Jan. 3, 2011) .......................... 16

*Haisten v. Grass Valley Med. Reimbursement*,
784 F.2d 1392 (9th Cir. 1986) ................................................................................................. 4

*Indiana Plumbing Supply v. Standard of Lynn, Inc.*,
880 F. Supp. 743 (C.D. Cal. 1995) ......................................................................................... 12

*Insurance Company of North America v. Marina Salina Cruz*,
649 F.2d 1266, 1271 (9th Cir. 1981) ...................................................................................... 12

*International Shoe Co. v. State of Washington*,
326 U.S. 310 (1945) ................................................................................................................. 3

*IO Group, Inc. v. Jordon*,
708 F. Supp. 2d 989 (N.D. Cal. 2010)...........................................................................9, 12, 21

*J. McIntyre Mach., Ltd. v. Nicastro,*
 564 U.S. 873 (2011) ................................................................................................. 3

*Lake v. Lake*,
 817 F.2d 1416 (9th Cir. 1987) ................................................................................. 7

*Leetsch v. Freedman,*
 260 F.3d 1100 (9th Cir. 2001) ............................................................................... 18

*Lueck v. Sundstrand Corp.*,
 236 F.3d 1137 (9th Cir. 2001) ............................................................................... 18

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
 647 F.3d 1218 (9th Cir. 2011) .......................................................................... 8, 9, 11

*MGM Studios, Inc. v Grokster Ltd,*
 243 F. Supp. 2d 1073 (C.D. Cal. 2003) ............................................................. 7, 12

*Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
 757 F.2d 1058 (9th Cir. 1985) ................................................................................. 6

*Pacific Bell Telephone Co. v. 88 Connection Corp*.,
 No. 15-cv-04554-LB, 2016 U.S. Dist. LEXIS 32737 (N.D. Cal. Mar. 14, 2016) ..................... 17

*Panavision International, Ltd. Partnership v. Toeppen*,
 141 F.3d 1316 (9th Cir. 1998) ....................................................................... 10, 11, 12

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981) .............................................................................................. 18

*Rano v. Sipa Press, Inc.*,
 987 F.2d 580 (9th Cir. 1993) ................................................................................... 4

*Rio Properties v. Rio Intetnational Interlink*,
 284 F.3d 1007, at 1020 (9th Cir. 2002) .................................................................. 7

*Ruggieri v. General Well Service, Inc.*,
 535 F. Supp. 525 (D. Colo. 1982) ........................................................................... 5

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) .............................................................................. 6, 11

*Sinatra v. Naional Enquirer, Inc.*,
 854 F.2d 1191 (9th Cir. 1988) ............................................................................... 12

*St. Francis Assisi v. Kuwait Finance House,*
 No. 3:16-cv-3240-LB, 2016 U.S. Dist. LEXIS 136152 (N.D. Cal. Sep. 30,
 2016) ........................................................................................................................ 17

*Terracom v. Valley National Bank,*
 49 F.3d 555 (9th Cir. 1995) ................................................................................... 11

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) ................................................................................................. 20

*UFCW, Locals 197 & 373 v. Alpha Beta Co.*,
  736 F.2d 1371 (9th Cir. 1984) ................................................................................................. 14

*Universal City Studios, Inc v Film Ventures International, Inc.*,
  543 F Supp. 1134 (C.D. Cal. 1982) ......................................................................................... 10

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988) ................................................................................................................. 15

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................................................. 10

*Walters v. Boyd*,
  187 F. Supp. 479 (S.D. Tex. 1960) .......................................................................................... 14

*Williams-Sonoma Inc. v. Friendfinder, Inc.*,
  No. C 06-06572, 2007 U.S. Dist. LEXIS 31299 (N.D. Cal. April 17, 2007) ........................... 17

*Zenger-Miller, Inc. v. Training Team, GmbH*,
  757 F. Supp. 1062 (N.D. Cal. 1991) .......................................................................................... 5

*Ziegler v. Indian River County*,
  64 F.3d 470 (9th Cir. 1995). .................................................................................................... 13

**Statutes**

17 U.S.C. 512 (c)(1)(C) ................................................................................................................ 4

**Other Authorities**

Civ. L.R. 5-5 ............................................................................................................................ 3, 14

Fed. R. Civ. P. 4 .......................................................................................................... 2, 14, 15, 16

Fed. R. Civ. P. 5(a) ...................................................................................................................... 15

Fed. R. Civ. P. 5(b) ...................................................................................................................... 14

# I.  INTRODUCTION

In light of Einthusan[1], Lotus Five Star, Ltd, and Arun Shanmuganathan's (collectively, "Defendants") significant contacts with the state of California and their express consent, this Court undoubtedly holds personal jurisdiction over each Defendant. Plaintiffs properly served each Defendant as authorized by this Court, and Defendants have failed to establish that this Court is a *forum non conveniens.* Accordingly, this Court should retain this case and deny the Motion to Dismiss. Docket No. 53.

# II.  STATEMENT OF THE ISSUES

1.   Can this Court exercise personal jurisdiction over Defendants based on their express consent to personal jurisdiction in the Northern District of California and specific personal jurisdiction due to Defendants' significant contacts with the State of California?

2.   Is service of process sufficient where Defendants were served according to the Federal Rules of Civil Procedure, The Hague Convention, and pursuant to this Court's order?

3.   Should the Court retain this case in this forum where the facts, laws, and evidence all strongly weigh in favor of the retention of this matter?

# III.  BRIEF STATEMENT OF FACTS

Defendants, through the Einthusan websites, unlawfully infringe hundreds of copyrighted films owned by Cinematix, LLC, AP International, Home Screen Entertainment, FZE, and Home Screen Entertainment, PTE. Ltd. (collectively, "Plaintiffs"). Docket No. 44. Defendants own and operate the Einthusan websites (*i.e.*, Einthusan.com, Einthusan.tv, and Einthusan.ca), which provide the public with copyrighted motion pictures. *Id*. Through the Einthusan websites, without Plaintiffs' permission or authorization, Defendants upload, store, host, disseminate, distribute, sell, publicly perform and display, and otherwise illegally make available copyrighted motion pictures from servers located in the United States to provide access to the motion pictures to users in the United States, including in this District. As a result of Defendants' actions, consumer users in this

---

[1] While Defendants contend Einthusan is merely a name, it is referred to as a "Canadian business" in the lawsuit filed by the Einthusan websites against GoDaddy.com, LLC in the District of Arizona (Case No. 2:19-cv-4803) as well as inferred to as a business by the Defendants in response to DMCA notifications. It appears to be a standalone entity operated by other entities and individuals.

1    District may illegally view, stream, and download the copyrighted motion pictures on their own

2    computers, tablets, or mobile devices. Defendants, through the Einthusan websites, engage in

3    unauthorized conduct and directly infringe Plaintiffs' rights in the copyrighted motion pictures. *Id*.

4    Defendants also provide and control the site, facilities, and means for the Einthusan websites and

5    provide a mechanism for California consumer users to engage in copyright infringement, while

6    Defendants financially profit from the infringement. *Id*. at ¶¶ 3-7. Defendants' Einthusan websites

7    have hundreds of thousands of users. Declaration of Caleb Hatch ("Hatch Decl.") at ¶ 12, Exhibit

8    I. United States is the largest market of the pirated copyrighted works. *Id*.; *see also* Docket No. 44

9    at ¶¶ 3, 7, 31-32, 45-46, 50-52.

10    Plaintiffs brought this action to thwart Defendants from unlawfully infringing hundreds of

11    their copyright protected works viewed by consumers in California. Docket No. 44. Shortly after

12    Plaintiffs filed their Complaint, Plaintiffs engaged a Canadian process server to effect service of

13    process on Defendants. Docket No. 9 at ¶ 13. The process server team attempted to serve

14    Defendants 11 times at all five physical locations provided by Defendants via various media

15    platforms and websites. *Id*. The process servers reported that most of the addresses are fictitious

16    and Defendants appeared to be evading service at the remaining valid physical addresses by

17    refusing to answer or come near the front door. *Id*. As a result, Plaintiffs sought and received

18    permission from this Court to effect service on Defendants via alternative means including: email,

19    Facebook, and through Defendants' websites. Docket Nos. 8, 13. The Court granted Plaintiffs

20    leave under Fed. R. Civ. P. 4(f)(3) to serve the Summonses and Complaint on all Defendants via

21    various alternative methods. Docket No. 13 at 2.

22    Defendants Einthusan, Lotus Five Star, and Shanmuganathan were validly served on

23    August 9, 2019, in compliance with this Court's Order. *Id*.; Docket Nos. 21-23. Specifically,

24    Plaintiffs served Shanmuganathan and Einthusan by email to support@einthusan.com, via

25    Facebook at https://www.facebook.com/einthusan.enterprize/, and via the Einthusan website at

26    https://einthusan.ca/propreport/. Docket Nos. 21-22. Plaintiffs served Lotus Five Star using the

27    same means and, additionally, by email to daniesh@einthusan.enterprize/. Docket No. 23.

28    In response, Defendants each filed a motion to dismiss and for a more definite statement.

1  Docket Nos. 27-30. Plaintiffs filed their First Amended Complaint on September 12, 2019, to

2  allege additional facts supporting jurisdiction over Defendants. Docket No. 44. Plaintiffs served

3  the same on Defendants' counsel via the Court's Electronic Court Filing system. *Id.*; *see also* Civ.

4  L.R. 5-5. All Defendants have appeared in this matter through counsel. Docket Nos. 38-40, 52.

5       After Plaintiffs filed their First Amended Complaint, Plaintiffs opposed Defendants' then-

6  pending motions to dismiss. Docket No. 48. Defendants then withdrew their motions, Docket No.

7  51, and refiled filed the instant joint motion to dismiss Plaintiffs' First Amended Complaint.

8  Docket No. 53.

9  **IV.  MEMORANDUM OF POINTS AND AUTHORITIES**

10  **A.**  **This Court has personal jurisdiction over Defendants because they have expressly**

11  **consented to personal jurisdiction and because specific personal jurisdiction exists.**

12       **1.**  **Legal Standard**

13       When ruling on a motion asserting lack of personal jurisdiction based on affidavits or on

14  the basis of affidavits and discovery materials without holding an evidentiary hearing, a plaintiff's

15  burden is met with a simple prima facie showing of personal jurisdiction. *Fields v. Sedgwick*

16  *Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). In determining whether a plaintiff has

17  met this burden, uncontroverted allegations in the plaintiff's complaint must be taken as true, and

18  "'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's]

19  favor. . . [.]'" *Am. Tel. &Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)

20  (citation omitted).

21       Traditional bases for conferring a court with personal jurisdiction include a defendant's

22  consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's

23  citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 879-

24  80 (2011). Absent a traditional basis for jurisdiction, the Due Process Clause requires that the

25  defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit

26  does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of*

27  *Wash.*, 564 U.S. 310, 316 (1945) (internal quotation marks omitted).

28       In copyright infringement cases, "there is no applicable federal statute

1   governing personal jurisdiction. . . hence the law of the state in which the district court sits -

2   California- applies." *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 (9th Cir. 1993) (citation

3   omitted).  Therefore, this Court need only determine whether the exercise of jurisdiction in this

4   case would comport with due process. *See Haisten v. Grass Valley Med. Reimbursement,* 784 F.2d

5   1392, 1396 (9th Cir. 1986).

6        **2.**     **Defendants explicitly consented to personal jurisdiction in this District.**

7       Defendants contend that the Court lacks personal jurisdiction over them. However, all

8   Defendants named in the First Amended Complaint, Docket No. 44, expressly consented to personal

9   jurisdiction in the Northern District of California. Hatch Decl. at ¶ 2. Defendant Lotus Five Star

10  argues that the consent statement provided by Defendant Shanmuganathan should only apply to

11  Defendant Leo India Films. Docket No. 53 at 41, ¶ 5. Defendant Shanmuganathan argues his

12  consent should only apply to Lotus Five Star and Leo India Films. *Id*. Defendants' self-serving

13  arguments should be disregarded by this Court.

14      As Plaintiffs explained in their First Amended Complaint, (1) on March 25, 2019, (2) in

15  response to a DMCA notice regarding the Einthusan websites and specifically identifying the

16  hundreds of infringing motion pictures, (3) Defendant Shanmuganathan named himself as the

17  subscriber, identified the company as Einthusan.com, provided (an ultimately false) address for

18  Einthusan, and stated "I consent to the jurisdiction of the Northern District of California and I'll

19  accept service of process from the person who provided notice under 17 U.S.C. 512 (c)(1)(C) or an

20  agent of such person." Docket No. 44 at ¶¶ 25-29. A copy of Shanmuganathan's consent to personal

21  jurisdiction is attached to the Hatch Declaration filed herewith. Hatch Decl. at ¶ 2, Exhibit A.

22      Defendant Lotus Five Star's argument that Defendant Shanmuganathan only submits

23  counternotices for Leo India Films is inaccurate and conflicts with Shanmuganathan's declaration

24  submitted with Defendants' Motion. *Compare* Docket No. 53 at 4, *with* Docket No. 53 at Exhibit 2

25  ¶ 5 (stating "[t]he counter-notifications are always submitted on behalf of *Lotus Five Star* or Leo

26  India Films") (emphasis added). Shanmuganathan declares that his job as licensing officer for Lotus

27

28

Five Star entails purportedly procuring licenses[2] for the films on the Einthusan websites, evaluating and responding to DMCA notices, and sublicensing films to Leo India Films from Lotus Five Star. Docket No. 53, Exhibit 2 at ¶¶ 3-4. Despite Shanmuganathan's argument that he only consented on behalf of *Lotus Five Star* or Leo India Films, he completed the consent notice on his own and for Einthusan.com as indicated on his signature block. Hatch Decl. at Exhibit A.

Additionally, Lotus Five Star's CEO, Daniesh Ram, responded to a DMCA notice stating his name as the subscriber, the company name as Lotus Five Star, and providing a non-existent address for Lotus Five Star. *Id*. at ¶ 11. Amazon rejected Daniesh Ram's counter-notification for failing to include all required information; however, it is clear again that Lotus Five Star was, and currently is, responsible for the content and operation of the Einthusan websites, controlling their means of operation, and responding to notifications on behalf of the websites. Despite Defendant Lotus Five Star's brief and baseless contentions to the contrary, it is clear that Defendant Lotus Five Star, as past and current operator and owner of the websites, has consented to this Court's jurisdiction. As shown by Shanmuganathan's declaration, he has the power, authorization, and control to consent in his own capacity and on behalf of Einthusan and Lotus five Star to personal jurisdiction in the Northern District of California. *Id.* at ¶ 2, Exhibit A; Docket No. 53 at 41, ¶ 5.

This Court's analysis should end here. "If a defendant consents to personal jurisdiction in a particular forum, then the court need not inquire further." *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1068 (N.D. Cal. 1991) (citing *Ruggieri v. General Well Service, Inc*., 535 F. Supp. 525, 528-29 (D. Colo. 1982)). The First Amended Complaint describes with particularity that Shanmuganathan consented to personal jurisdiction in this District individually and on behalf of Einthusan and Lotus Five Star. Docket No. 44 at ¶¶ 25-30. Shanmuganathan confirms he "always" submits the counter-notification consents on Lotus Five Star's behalf. Docket No. 53 at 41, ¶ 5. And, the counter-notification consent submitted herewith further confirms consent to personal jurisdiction was made on Shanmuganathan's individual behalf and for Einthusan. Hatch Decl., ¶ 2, Exhibit A.

---

[2] Defendants allege valid licenses for the infringed motion pictures but have declined to provide the same.

1    Defendants have expressly consented to personal jurisdiction in the Northern District of

2    California. Defendants' Motion should be denied.

3        **3.    Defendants are subject to specific personal jurisdiction.**

4    This Court also has specific personal jurisdiction over Defendants. The Ninth Circuit applies

5    a three-part test for specific jurisdiction: (1) the defendant purposefully availed itself of the privilege

6    of conducting activities in the forum or purposefully directed activities toward the forum; (2) the

7    claim must be one which arises out of, results from, or related to the defendants' forum-related

8    activities; and (3) the exercise of jurisdiction must be reasonable. *E.g.*, *Schwarzenegger v. Fred*

9    *Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Paccar Int'l, Inc. v. Commercial Bank of*

10   *Kuwait, S.A.K.*, 757 F.2d 1058, 1062 (9th Cir. 1985). "The plaintiff bears the burden of satisfying

11   the first two prongs of the test." *Paccar*, 757 F.2d at 1062. The burden then shifts to the defendant

12   to "'present a compelling case' that the exercise of jurisdiction would not be

13   reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

14   Defendants are subject to specific personal jurisdiction through their past and current

15   operation and ownership of the Einthusan websites which specifically targeted Californian residents

16   including residents within this District. As alleged in the First Amended Complaint, Defendants

17   have attracted hundreds of thousands of users to the Einthusan websites, which in turn generates

18   advertising and sales revenues for Defendants. Docket No. 53 at ¶ 7. Defendants profit from third-

19   party advertising that targets users based on the users' location (geo-targeting) or based on the users'

20   prior internet browsing history (interest-based targeting). *Id.* Plaintiffs alleged this advertising

21   targets users in the United States, in the State of California, and specifically user's in the Northern

22   District of California. *Id.* Because Defendants have caused tortious injury through copyright

23   infringement within the state of California, and have caused tortious injury in California by an act

24   outside of the State while regularly doing, transacting, conducting, or soliciting business, engaging

25   in a persistent course of conduct, or deriving substantial revenue from services rendered in

26   California, personal jurisdiction is conferred. *Id.* at ¶ 31.

27

28

### a. Purposeful Availment and Direction

"'A purposeful availment analysis is most often used in suits sounding in contract,' while a 'purposeful direction analysis . . . is most often used in suits sounding in tort.'" *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). In tort claims, the Ninth Circuit evaluates "purposeful direction" using the "Calder Effects Test," under which "'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).  Under either the "purposeful availment" or "purposeful direction," analysis the first prong of the test for specific jurisdiction is met.

Numerous cases both within and outside this circuit have applied the doctrine to actions for copyright infringement or other torts involving intellectual property. *See, e.g.*, *Columbia Pictures Television v Krypton Broadcasting of Birmingham, Inc*, 106 F.3d 284, 289 (9th Cir. 1997) (holding that willful copyright infringement alone was enough to establish purposeful availment), overruled on other grounds by *Feltner v Columbia Pictures Television*, 523 U.S. 340 (1998);  *MGM Studios, Inc. v Grokster Ltd*, 243 F. Supp. 2d 1073, 1089-90 (C.D. Cal. 2003) (copyright infringement claim).

Plaintiffs alleged Defendants willfully infringed their copyrights. Docket No. 44. Plaintiffs alleged Defendants knew or should have known that the copyrights belonged to Plaintiffs. *Id*. at ¶¶ 54-74. Plaintiffs also alleged that Defendants advertising targets users in the United States, in the State of California, and in this District. *Id.* at ¶¶ 3, 7, 31-32, 45-46, 50-52; *see also* Hatch Decl. at ¶¶ 12-13. Defendants' willful infringement of Plaintiffs' intellectual property rights meets the requirements of the *Calder*-effects test.

Defendants acted intentionally in the operation of the Einthusan website, which directs and permits downloads, viewing, and displaying of motion pictures that belong to Plaintiffs. Docket No. 44; *see also Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (operating a passive website is an intentional act); *Brayton Purcell*, 606 F.3d at 1129 ("operating a passive website was an intentional act"); *Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-04500 CRB, 2012 U.S. Dist. LEXIS 131711, 2012 WL 4068624, at *2 (N.D. Cal. Sept. 14, 2012) ("The

intentional act element is broadly construed, and can be met by the mere operation of a website");
*Cybernet Entm't LLC v. IG Media Inc*., No. CV 12-01101-PHX-SRB, 2012 U.S. Dist. LEXIS
192640, at *11-31 (D. Ariz. Nov. 30, 2012) (Defendant has acted intentionally in permitting
uploads, downloads, and then displaying videos that belong to Plaintiff and thus infringe Plaintiff's
copyright… Defendant's operation of its websites constitutes an intentional act).

Additionally, Defendants purposefully and intentionally direct users and viewers, including
those in the United States and specifically the State of California, to the websites and infringing
films through social media.[3] This first requirement is met.

The "express aiming" prong is also met as demonstrated because the primary website
visitors, indeed the vast majority of the hundreds of thousands of visitors to Defendants' Einthusan
websites are U.S. residents, including from this the State of California and within this District.
Docket No. 53 at ¶¶ 3-5, 7, 31-32, 45-497; Hatch Decl. at ¶¶ 12-13. Defendants have agreements
with multiple California-based internet service and advertising companies. Defendants' websites
specifically target California residents with ads designed for the visitor where the visitor is located.
Defendants' websites are interactive and encourage users and visitors to post comments including
many from the United States and this District in particular. Defendants purposefully and
intentionally direct users and viewers, including those in the United States and specifically the State
of California, to the websites and infringing films through social media. *Id*.

The Ninth Circuit has found that the number of visitors to a website from a particular forum
is relevant to the express aiming inquiry. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d
1218, 1230 (9th Cir. 2011) (concluding that there was express aiming at California, where, *inter
alia*, "[a] substantial number of hits to [defendant's] website came from California residents").

Additionally, Defendants generate revenue primarily through the sale of advertising space
and one-time membership fees on its various websites. Docket No. 44 at ¶¶ 7, 31-32, 44, 74. The
Ninth Circuit has found "most salient the fact that [a defendant] use[s] [a plaintiff's]
copyrighted [motion pictures] as part of its exploitation of the [forum] market for its own

---

[3] *See e.g.*, https://www.facebook.com/pg/einthusan.enterprize/community/?ref=page_internal;
https://www.facebook.com/einthusan.enterprize/; https://twitter.com/sabinath2.

commercial gain." *See Mavrix*, 647 F.3d at 1229. For purposes of personal jurisdiction, the relevant inquiry is whether the third-party advertisements demonstrate that Defendant exploited the United States market for commercial gain. *See id.* at 1229-30. Defendants do not deny that the websites use targeted advertising based on a users' specific location and browsing history; directly targeting residents of California and from within this district. Docket No. 44 at ¶¶ 7, 32. Defendants argue that the targeted ads do not support a finding of express aiming, because Defendants are not physically conducting the advertising. The *Mavrix*-court specifically rejected this argument:

> [Defendant] makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [defendant]… In this context, it is immaterial whether the third-party advertisers or [defendant] targeted California residents. The fact that the advertisements targeted California residents indicates that [defendant] knows—either actually or constructively—about its California user base, and that it exploits that base for commercial gain by selling space on its website for advertisements.

*See Mavrix*, 647 F.3d at 1230; *see also IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 992-93, 995, 997 (N.D. Cal. 2010) (concluding there was express aiming and personal jurisdiction in copyright infringement action where defendant owned and operated a website where users could view photographs and moving pictures, stating in background section that "[a]lthough [d]efendant does not charge users . . . , the site is a commercial venture as [d]efendant earned revenue from advertisements that appeared on the site").

Additionally, Defendants generate revenue through subscription fees directly from visitors to the website. Defendants have several contracts and agreements with United States entities, including domain registrations, direct advertising customer relationships, web hosting company, and servers located in the United States and in the State of California, all of which demonstrate that Defendants knew they were cultivating a United States market and desired to do so. Hatch Decl. at ¶¶ 3-9, 12-13; *see also Mavrix*, 647 F.3d at 1230. Website traffic originates in the United States and within this District. The individual infringed films are replete with comments from residents of California and specifically within this District. Hatch Decl. at ¶¶ 12-13. In addition, the fact that Defendant has a "DMCA reporting tool" and reference to "State Laws" shows that it was aware that

1   its websites "exploited (and threatened) U.S. copyright interests."[4] *See also Datatech,* 2012 U.S.

2   Dist. LEXIS 131711, at *8-9  (granting a preliminary injunction and concluding there was at least

3   a reasonable probability that plaintiff could establish personal jurisdiction where defendant's file-

4   sharing website received "a 'substantial number of hits' from the United States and directly profited

5   from those hits" and where " features of the website's operation and Terms of Service demonstrated

6   an awareness that the website exploited U.S. copyright interests").

7        Defendants' revenue and advertisements are directed to and target residents in this District,

8   Defendants generate income from residents in this District through targeted advertising and

9   subscription fees, Defendants' contacts with residents within the Northern District of California in

10   conjunction with its websites, and their profits-whether directly or indirectly-from advertising,

11   sufficiently establish a prima facie case of express aiming at California.

12        With respect to the third prong, harm to the forum, courts often presume irreparable injury

13   upon a prima facie showing of copyright infringement. *See, e.g.*, *Universal City Studios, Inc v Film*

14   *Ventures Int'l, In.c*, 543 F Supp. 1134, 1139 (C.D. Cal. 1982). Defendants do not contend, nor could

15   they, that Plaintiffs have not suffered harm in the Northern District of California as a result of

16   Defendants' actions. Thus, Defendants concede the same. Plaintiffs have adequately alleged that

17   they have suffered such harm as a result of Defendants' actions.

18                      **b.**    **Arising out of Forum-Related Activities**

19        The second requirement for specific jurisdiction is that a plaintiff's claim must arise out of

20   the defendant's activities in the forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th

21   Cir. 1988). A defendant's suit-related conduct "must arise out of contact that the 'defendant himself'

22   creates with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*,

23   471 U.S. at 475) (emphasis in original)).  The analysis "must be focused on the defendant's contacts

24   with the forum State itself, not the defendant's contacts with persons who reside there."  *Walden*,

25   571 U.S. at 285 (citations omitted).

26

27

---

28   [4] https://einthusan.ca/terms/

1    The Ninth Circuit had adopted the "'but for' test to determine whether a particular claim

2   arises out of forum-related activities." *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

3   Thus, a claim meets this requirement if the injury to the plaintiff would not have occurred "but for"

4   the defendant's forum-related activity. *See id.*; *Panavision*, 141 F.3d at 1322. Here, but for

5   Defendants' illegal actions and forum-related activity in this District, Plaintiffs would not have been

6   injured. Plaintiffs' injuries stem from the substantial amount of traffic to Defendant's websites,

7   including by viewers in this District. Thus, Plaintiffs' claims arise out of Defendants' forum-related

8   activities. *See Mavrix*, 647 F.3d at 1228 ("[Plaintiff's] claim of copyright infringement arises out of

9   [defendant's] publication of the photos on a website accessible to users in the forum state."].

10  Defendants do not contest this element or contend that it has not been met, and therefore concede

11  the same.

12            **c.      Exercising specific jurisdiction over Defendants is reasonable.**

13            The burden on this element shifts to Defendants to "'present *a compelling case*' that the

14  exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (emphasis

15  added). The Ninth Circuit regularly evaluates seven factors in considering whether the exercise

16  of jurisdiction is reasonable: (1) the extent of a defendant's purposeful interjection into the forum;

17  (2) a defendant's burden from litigating in the forum; (3) the extent of conflict with the sovereignty

18  of a defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

19  judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

20  convenient and effective relief; and (7) the existence of an alternative forum. *E.g.*, *Terracom v.

21  Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). No one factor is dispositive; court must

22  balance all seven. *Core-Vent*, 11 F.3d at 1486-87 (9th Cir. 1993).

23            Defendants have not, and cannot, met their burden in presenting a compelling case that the

24  exercise of jurisdiction would be unreasonable as the exercise of jurisdiction in this case is

25  undeniably reasonable.  In considering the first factor, the "purposeful injection" factor parallels the

26  purposeful direction analysis. *GT Sec., Inc. v. Klastech GmbH*, No. C-13-03090 JCS, 2014 U.S.

27  Dist. LEXIS 88237, at *53 (N.D. Cal. June 27, 2014) (defendant's activities that satisfied the

28  "'purposeful direction' prong" also "demonstrate a sufficient level of purposeful injection[.]").

1   Because Defendants purposefully directed conduct to Plaintiffs, a fortiori, they have purposefully
2   injected themselves as well. *See* Docket No. 44 at ¶¶ 3-5, 31-32, 44-52.

3        The second factor is the burden on the Defendants. "This factor examines how difficult it
4   will be for a defendant to travel to the forum state to defend itself." *Ind. Plumbing Supply*
5   *v. Standard of Lynn, Inc.,* 880 F. Supp. 743 (C.D. Cal Mar. 9, 1995). Defendants claim Einthusan
6   and Lotus Five Star are small companies with employees in multiple foreign counties and it would
7   be expensive to defend this case in California. Defendants seem to forget that they chose this District
8   to litigate this matter. Hatch Decl. at ¶ 2; Docket No. 53, Exhibit 2 at ¶¶ 3, 5. The Ninth Circuit has
9   recognized that "modern means of communication and transportation have tended to diminish the
10  burdens of defense of a lawsuit in a distant forum." *Ins. Co. of N. Am. v. Marina Salina Cruz,* 649
11  F.2d 1266, 1271 (9th Cir. 1981). "[M]odern advances in communications and transportation have
12  significantly reduced the burden of litigating outside one's home state." *MGM*, 243 F. Supp. 2d at
13  1093, quoting *Sinatra v Nat'l Enquirer, Inc*, 854 F.2d 1191, 1198-99 (9th Cir 1988); *see*
14  *also Panavision*, 141 F3d at 1323. Defendant Shanmuganathan briefly argues that he resides in Sri
15  Lanka and it would be expensive to travel. Docket No. 53 at 11. Shanmuganathan will need to travel
16  regardless of the forum, and he presents no contention that it would be more difficult to travel to
17  California than Canada. This factor also weighs in favor of jurisdiction in California.

18       The third factor is the potential for conflicts with the sovereignty of another state. *E.g.*, *IO*
19  *Grp.*, 708 F. Supp. 2d at 996. Defendants do not argue that there is any conflict with another state's
20  laws or regulations. Here, Plaintiffs' claims arise under U.S. federal law and international law. As
21  such, there is no conflict.

22       With respect to the forum state's interest in adjudication, a state and its courts, including this
23  Court, have a strong interest in protecting California citizens and domestic businesses from the
24  wrongful acts of nonresident defendants. *Id*. California has an undeniable interest in adjudicating
25  copyright infringement that is directly affecting the citizens of this State. Accordingly, this factor
26  weighs in Plaintiffs' favor.

27       The fifth factor provides the most efficient judicial resolution. This factor involves a
28  comparison of alternative forums. The location of the witnesses and the evidence is an important

consideration. *Core-Vent,* 11 F.3d at 1489. Based on the location of the witnesses and evidence, the case can actually be litigated most effectively in the United States where the majority of the infringing activity has occurred. Defendants merely state that some evidence and witnesses likely are in Canada or Sri Lanka. Docket No. 53 at 11. However, Defendants' mere speculation and lack of any supporting information is wholly insufficient. Rather, Defendants' web hosting company, domain name registers, servers, advertisers, and ad revenue generating businesses are in the United States. Hatch Decl. at ¶¶ 3-9. The vast majority of the visitors to the Einthusan websites are in the United States. *Id.* at 12; Docket No. 44 at ¶¶ 3, 7, 31-32, 45-46, 50-52. Thus, the majority of the evidence is located in the United States. That many of the claims will be adjudicated under U.S. federal law also lends significant support to this District being the appropriate location for this action. This factor supports the exercise of jurisdiction by this Court.

With respect to convenience and effectiveness of relief for Plaintiffs, Defendants do not allege that California is not a convenient and effective forum for Plaintiffs. Thus, concede the same. California is a convenient forum for Plaintiffs, and much more so than Canada. Given the frequency with which California courts are faced with intellectual property claims, California is certainly well-suited to providing Plaintiffs with appropriate relief for their injuries, including the requested injunction. Further, with the majority of the evidence located in the United States, California is far more effective and convenient than Canada. This factor thus strongly favors Plaintiffs.

The final factor regarding the existence of an alternative forum also does *not* cut in Defendants' favor. Litigating this case in the United States, and in this District would significantly assist Plaintiffs in obtaining actual and convenient relief. Defendants argue that Canada in general would be an alternative forum because it also allows for private actions for copyright infringement. However, the fact that a separate country has its own laws that might cover a dispute does not change the fact that many of the claims are based on and adjudicated under U.S. federal laws. It simply makes no sense to send this dispute to a foreign country, and then make that country apply this country's laws. Once again, this factor weighs in Plaintiff's favor.

It is Defendants' burden is to "present a compelling case" that the exercise of jurisdiction is unreasonable. *Ziegler v. Indian River County,* 64 F.3d 470, 476 (9th Cir. 1995). Defendants have

1  failed to meet this burden. Accordingly, personal jurisdiction over Defendants is appropriate and

2  reasonable and Defendants' Motion should be denied.

3  **B.    Defendants were properly and sufficiently served pursuant to the Federal Rules of**

4      **Civil Procedure, the Hague Convention, and this Court's Order.**

5      Rule 4 of the Federal Rules of Civil Procedure should be liberally construed if a party

6  received sufficient notice of the complaint. *See UFCW, Locals 197 & 373 v. Alpha Beta Co.*, 736

7  F.2d 1371, 1382 (9th Cir. 1984). Defendants spend an inordinate amount of time contending that

8  Plaintiffs should be required to serve Defendants through one of Canada's Central Authority

9  offices, while overlooking that service through a Central Authority office is merely *one of many*

10  methods through which service may be properly effectuated. This Court already determined the

11  methods of service Plaintiffs' employed to be reasonable and valid, Docket No. 13.

12      Plaintiffs filed their First Amended Complaint, which is a pleading other than the original

13  complaint under Rule 5. The First Amended Complaint was properly served on Defendants' counsel

14  through ECF in compliance with Civ. L.R. 5-5 and pursuant to Rule 5(b)(2)(E). An amended

15  complaint in this case qualifies as a "pleading subsequent to the original complaint," thus allowing

16  it to be served in any manner prescribed in Rule 5(b). *Emp. Painters' Tr. v. Ethan Enters.*, 480 F.3d

17  993, 999 (9th Cir. 2007); *see also Walters v. Boyd*, 187 F. Supp. 479, 480-81 (S.D. Tex. 1960)

18  ("Rule 5(b) has been complied with by virtue of plaintiffs' mailing a copy of the second amended

19  original complaint to the attorney who entered the *special appearance for defendant*") (emphasis

20  added).

21      The case cited by Defendants, *Employee Painters' Trust v. Ethan Enterprises, Inc.*, 480 F.3d

22  993, 995 (9th Cir. 2007), actually supports this fact. As that court notes, amended complaints are

23  served under Rule 5, especially where defendants have appeared, even if specially, and where

24  defendants have provided false addresses and failed to provide valid addresses.[5] Additionally, Rule

25  5(b)(1) specifically *requires* service on the attorney of a represented party. There are two

26  circumstances in which amended complaints must be served pursuant to Rule 4; when (1) a party is

27

28  _____
    [5]The request for legitimate addresses for Defendants remains unanswered. Hatch Decl. at ¶ 10.

1    "in default for failure to appear" *and* (2) the "pleadings assert[] new or additional claims for

2    relief." *Id*. (citing Fed. R. Civ. P. 5(a)). Neither circumstance applies here.

3          Defendants Shanmuganathan,[6] Einthusan, and Lotus Five Star have been properly served

4    with the Amended Complaint through their counsel. Defendant, Leo India Films, was served by

5    personal service at its address in Canada. Docket No. 55. Additionally, all Defendants named in the

6    First Amended Complaint have appeared generally through their counsel of record Lewis E Hudnell,

7    III. Docket No. 52.

8          The crux of Defendants' argument rests on a misplaced belief that Canadian defendants

9    can only be served with process through the Central Authority as required by The Hague

10   Convention. Defendants are mistaken. While the Hague Convention requires signatories to create

11   a central authority, that is merely *one* possible option for service of process on foreign defendants.

12   *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988).

13         The Ninth Circuit has opined that "courts have applied Rule 4(f)(2)(A) to approve personal

14   service carried out in accordance with foreign law." *Brockmeyer v. May*, 383 F.3d 798, 806 (9th

15   Cir. 2004). Rule 4(f) provides three options for serving an individual in a foreign country. First,

16   unless a federal law provides otherwise, an individual may be served at a place not within any

17   jurisdiction of the United States by any internationally agreed means of service such as those

18   authorized by the Hague Convention. Rule 4(f)(1). If, however, an international agreement allows

19   but does not specify other means, an individual may be served by a method that is reasonably

20   calculated to give notice including delivering a copy of the summons and complaint to the

21   individually personally or using any form of receipt-requested mail. *See* Rule 4(f)(2)(C).  Or, an

22   individual may be served by other means not prohibited by international agreement, as the court

23   orders. Rule 4(f)(3).

24         Because The Hague Convention and Canadian law authorize personal service, Plaintiffs

25

---

26   [6] On one hand, Shanmuganathan declares he resides in Sri Lanka, Docket No. 53 at 18. On the
     other hand, Defendants argues Shanmuganathan resides in Canada, Docket No. 53 at 22, and is a
27   Canadian citizen, Docket No. 27 at 10. Shanmuganathan's Declaration was signed in Canada.
     Docket No. 53 at 42. And, his consent to personal jurisdiction also lists his Canadian address.
28   Hatch Decl. at ¶ 2, Exhibit A.

1  first attempted to serve Defendants personally. Docket No. 8; *see also* Fed. R. Civ. P. 4(f)(1);

2  *Aquawood LLC v. Wide Eyes Marketing*, No. CV 11-03046 SJO (AGRx), 2011 U.S. Dist. Lexis

3  164395, at *9 (C.D. Cal. Oct. 31, 2011) (Canadian law allows personal service). When that did

4  not work, Plaintiffs moved the Court for alternative service under Fed. R. Civ. P. 4(f)(3) by other

5  means not prohibited by international agreement.

6        Article 10(b) of The Hague Convention specifically states that the Convention shall not

7  interfere with the freedom to effect service by personal service via a private process server. Canada

8  has not lodged objections to service by judicial officers, officials or other competent persons; nor

9  has Canada objected to service by other interested persons. In fact, both the United States and

10  Canada specifically allow service of process through private process servers, and Canada merely

11  directs everyone to the Yellow Pages to locate a process server.[7] No court has held that service

12  under Article 10(b) by a process server invalid in Canada as Defendant asks this Court to do. And,

13  Defendants have not cited any supporting authority for its position.

14        Additionally, as signatory to the Hauge Convention; Canada has not objected to service by

15  electronic communication, and Rule 4(f)(3) (electronic communication) is proper here. *Goes Int'l,*

16  *AB v. Dodur Ltd*., No. 14-cv-5666 LB, 2015 U.S. Dist. LEXIS 50394, at *6-7 (N.D. Cal. Apr. 16,

17  2015) (where defendants appeared to be located in a foreign country but the physical addresses

18  where unknown, the Hague Convention is inapplicable, and the court was "unaware of any

19  international agreement that would prohibit" service via electronic communication). Courts

20  routinely and properly permit electronic communication alternative service, pursuant to Rule

21  4(f)(3), where plaintiff determined that the defendant operated via the Internet using false physical

22  address information in order to conceal location and avoid liability for unlawful conduct and relies

23  on electronic communications to operate a business. *Gucci Am., Inc. v. Huoqing*, No. C-09-05969

24  JCS, 2011 U.S. Dist. LEXIS 783, at *7–8 (N.D. Cal. Jan. 3, 2011); s*ee also, e.g.*, *Bright Sol.'s for*

25  *Dyslexia v. Lee,* No. 15-cv-01618-JSC, 2017 U.S. Dist. LEXIS 72242 (N.D. Cal. May 11, 2017)

26  (this Court granted leave to serve by email . . . where defendants were located in China and unable

27

28    [7]   *E.g.*,   The   Hague   Conference   on   Private   and   International   Law,
https://www.hcch.net/en/states/authorities/details3/?aid=248.

to be served personally); *St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-cv-3240-LB, 2016 U.S. Dist. LEXIS 136152 (N.D. Cal. Sep. 30, 2016) (service of process authorized by using Twitter where defendant could not otherwise be served and citing cases allowing service by email and Facebook); *Pac. Bell Tel. Co. v. 88 Connection Corp*., No. 15-cv-04554-LB, 2016 U.S. Dist. LEXIS 32737, at *7 (N.D. Cal. Mar. 14, 2016) (granting leave for service via email where plaintiff attempted service through multiple methods and hired a private investigator); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 U.S. Dist. LEXIS 42160, at *6–7 (N.D. Cal. Mar. 27, 2012) (collecting cases; granting motion for service by email); *Craigslist, Inc. v. Troopal Strategies, Inc.,* No. C 09-04741, 2010 U.S. Dist. LEXIS 144409, at *3 (N.D. Cal. Nov. 24, 2010) (granting leave for service by email to "[defendant,] a Panamanian corporation, because it regularly utilizes email in operating its business."); *Bank Julius Baer & Co. Ltd. v. WikiLeaks*, No. C 08-00824 JSW, 2008 U.S. Dist. LEXIS 14758, at *5 (N.D. Cal. Feb. 13, 2008) (granting leave to serve by email where "Plaintiffs have presented evidence that physical addresses for the WikiLeaks Defendants cannot be effectively located"); *Williams-Sonoma Inc. v. Friendfinder, Inc.*, No. C 06-06572, 2007 U.S. Dist. LEXIS 31299, at *4-5 (N.D. Cal. April 17, 2007) (granting leave for service by email of foreign website owners where "physical addresses for a number of the named defendants cannot be located or . . . defendants have refused to accept service.").

Pursuant to U.S and Canadian laws, The Hauge Convention, and this Court's Order, Docket No. 13, Defendants were properly served. There is no doubt Defendants received service of process. The Motion represents nothing more than an additional frivolous attempt by Defendants to delay the consequences of their illegal copyright infringement actions and increase the costs of adjudicating the same without a valid reason.

## C.     This forum is proper because the facts, laws, and evidence all strongly favor retention in this District.

The *forum non conveniens* standard is whether defendants have made a clear showing of facts which establish that trial in the chosen American forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (citation omitted). "*Forum non conveniens* is an

1    exceptional tool to be employed sparingly." *Boston Telecomm. Grp., Inc. v. Wood*, 588 F.3d 1201,

2    1206 (9th Cir. 2009). "Ordinarily, a plaintiff's choice of forum will not be disturbed unless the

3    'private interest' and the 'public interest' factors strongly favor trial in a foreign country." *Lueck*

4    *v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001)).

5         The fact that a case involves conduct or plaintiffs from a foreign country is not sufficient to

6    support dismissal. *See Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1224 (9th Cir.

7    2011). Defendants bear the burden of proving that (1) there is an adequate alternative forum, and

8    (2) the balance of private and public interest factors strongly favor dismissal." *Dole Food*, 303 F.3d

9    at 1118 (9th Cir. 2002) (citation omitted).

10        **1.    Defendants failed to show an adequate alternative forum.**

11        Where the plaintiff is a United States citizen - such as Plaintiff Cinematix, LLC - the

12    defendant must satisfy a heavy burden of proof to show an adequate alternate forum because "a

13    plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the

14    home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981). "At the outset of

15    any *forum non conveniens* inquiry, the court must determine whether there exists an

16    alternative forum." *Id*. at n. 22. An alternative forum is generally deemed adequate if the defendants

17    are amenable to process there, and the other jurisdiction offers a satisfactory remedy. *Id*. Courts

18    must also consider "[t]he foreign court's jurisdiction over the case and competency to decide the

19    legal questions involved." *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001) (citing *Cheng*

20    *v. Boeing Co.*, 708 F.2d 1406, 1410).

21        Defendants allege that Canada is an adequate alternative forum. Defendants briefly assert

22    that some defendants are amenable to service in Canada and Canada can provide relief in copyright

23    infringement claims. However, Defendants do not establish the first prong, namely, confirmation

24    that all Defendants are amenable to service of process in Canada. In fact, Defendants have spent a

25    significant amount of time attempting to argue that Defendant Shanmuganathan is not amenable to

26    service in Canada and state that he is only "agreeable", but not amenable, to service in Canada.

27    Docket No. 53 at n.12. Defendants have failed to establish that Defendants actually could be sued

28    in Canada. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) ("A

foreign forum is available when the *entire case and all parties* can come within the jurisdiction of that forum." (emphasis added)). Given Defendants' continued efforts to evade service of process, it is likely the same will continue in another forum. Additionally, Plaintiffs' counsel has requested valid Canadian addresses for each Defendant for service of process, without response. Hatch Decl. at ¶ 10. Defendants have failed to demonstrate that Canada is in fact an adequate alternative forum in which the claims could be brought.

**2.      Balance of Public and Private Factors Strongly Weighs in Plaintiffs' Favor.**

The balance of private and public interest factors undeniably favors Plaintiffs. The private interest factors are: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Boston Telecomm.*, 588 F.3d at 1206-07.

Defendants merely argue, with respect to the private factors, that some of the Plaintiffs are not located in the United States and some of Defendants' potential witnesses are located in Canada so costs of a trial in California could be greater for some witnesses. This falls woefully short of meeting Defendants' burden of proving each of the factors strongly favor trial in Canada.

The private factors strongly weigh in favor of the Court retaining this case. First, witnesses are scattered around the globe. Whether the case is tried in California or elsewhere, the parties will be forced to depend on deposition testimony in lieu of live testimony for at least some witnesses. *See CYBERsitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958, 965-66 (C.D. Cal. 2011); *Boston Telecomm.*, 588 F.3d at 1210. Indeed, Defendants do not state how many witnesses reside in Canada and would not bear any costs of travel, versus any witness they might include that must travel from other countries. Defendants also note that there are only a few employees total, so travel for the few that reside in Canada would not be an ordeal if any of them even needed to travel at all. Additionally, and as Defendant notes, Canada is no more convenient than the United States, except that travel to the United States is likely easier for all parties and witnesses outside of Canada. Thus, California is the more convenient forum, and factors one, two, and five weigh in

1    favor of the Court retaining the case.

2          Defendants have not attempted to address the majority of the relevant factors. The

3    remaining four factors are all in Plaintiffs' favor. The vast majority of Defendants' viewers, users,

4    marketing, and revenue are all from the United States. Defendants' domain names are registered

5    with United States companies, the advertising companies with which Defendant contracts are

6    located in the United States, the actual web hosting of the websites and the servers on which they

7    are hosted are located in the United States, and the largest portion of Defendants infringing actions

8    are directed to the United States and involve United States users. Hatch Decl. at ¶¶ 3-9, 12. In

9    short, nearly all of the potential evidence and sources of proof are located in the United States, the

10   State of California, and in this District. Everything else is likely digital and easily found in, or sent

11   to, the United States. Furthermore, there is no evidence that Defendants' unwilling witnesses, if

12   any, cannot be compelled to testify in the United States. Lastly, Defendants make no mention of

13   the fact that the enforceability of a judgment, especially an injunction, would clearly be more

14   practical in the United States given that the underlying companies hosting and supporting the

15   infringement are located in the United States and given Defendants' willful copyright

16   infringement, a judgment outside the U.S. would be ineffective. Ultimately, Defendants have not

17   even attempted to meet their burden. The private factors, undeniably favor this Court's retention

18   of this case.

19         The public interest factors are: "(1) the local interest in the lawsuit, (2) the court's familiarity

20   with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and

21   (5) the costs of resolving a dispute unrelated to a particular forum." *Tuazon v. R.J. Reynolds*

22   *Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006).

23         Defendants briefly argue that the infringed motion pictures are streamed all over the world

24   and a lawsuit in California would impose costs in California, so this Court should decline to hear

25   this case. Defendants again fail to address the pertinent factors and fail to meet their burden.

26         Each of these factors undoubtedly favor Plaintiffs. First, this District and the State of

27   California undeniably have a great interest in the outcome of this matter. Defendants do not dispute

28   the fact that the majority of the website viewers and users are located in the United States, with a

significant number of them located in California. Docket No. 44 at ¶¶ 3, 7, 31-32, 45-46, 50-52. Even a quick perusal of the infringed films on Defendants' websites clearly evidence significant users in the State of California and in this District. Hatch Decl. at ¶ 13. Additionally, companies contracting with and supporting the Einthusan websites will be affected by this case, all of which are located in the United States and some based in the State of California. This Court and the State of California have a strong interest in protecting California citizens and domestic businesses from the wrongful acts of nonresident defendants and the perpetuation of copyright infringement throughout California. *IO Grp.*, 708 F. Supp. 2d at 996. Defendants briefly allege that this Court will not be familiar with the governing law since this case involves U.S. and foreign copyrights. This argument is a complete contradiction to Defendants' prior argument that Canada is an available alternate forum since the applicable governing law is similar.

This Court is intimately familiar with the governing law given that it is U.S. federal law and the Berne Convention directing that the foreign copyrights are given the same effect in the United States as United States copyrights. Given the frequency with which California courts are faced with intellectual property claims, California is certainly well-suited to provide Plaintiffs with appropriate relief. Litigation costs are inherent no matter the forum. Defendants have failed to show that the costs to the Court and California will be any greater here than in Canada.

Defendants have not made a clear showing of facts which establish that trial in his forum would establish oppressiveness and vexation. Defendants have not met their burden regarding the public interest factors. Additionally, Defendants have failed to rebut the strong presumption in favor of Plaintiffs' choice of forum. As such, this Court should deny Defendants' Motion and retain this case.

/ / /

1

## V.  CONCLUSION

2      Defendants' Motion to dismiss fails in every respect. Defendants are subject to personal

3  jurisdiction in this District through their explicit consent. Defendants are also subject to personal

4  jurisdiction under specific jurisdiction. Defendants were properly served, and Defendants'

5  arguments to the contrary are unsupported. Defendants have failed to carry their burden of proving

6  *forum non conveniens*. Plaintiffs respectfully request this Court deny Defendants' Motion and

7  allow this case to proceed on the merits.

8      Respectfully submitted this 10th day of October 2019.

9

10                              By: /s/ George H. Brunt
                                   George H. Brunt, CA Bar No. 223457
11                                 GeorgeB@leehayes.com
                                   LEE & HAYES, P.C.
12                                 601 W. Riverside Ave. Suite 1400
                                   Spokane, Washington 99201
13                                 Telephone: (509) 324-9256

14                                 *Attorneys for Plaintiffs Cinematix, LLC,*
                                   *AP International, Home Screen Entertainment, FZE,*
15                                 *Home Screen Entertainment, PTE. Ltd.*

16

17

18

19

20

21

22

23

24

25

26

27

28