Lewis E. Hudnell, III (CASBN 218736)
Hudnell Law Group P.C.
800 W. El Camino Real Suite 180
Mountain View, California 94040
T: 650.564.7720
F: 347.772.3034
E: lewis@hudnelllaw.com

Steven N. Williams (*Pro Hac Vice*)
E-mail: swilliams@munsch.com
William Zac Duffy (*Pro Hac Vice*)
E-mail: zduffy@munsch.com
Winston O. Huff (*Pro Hac Vice*)
E-mail: whuff@munsch.com
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, TX 75201-6659
Telephone: 214.855.7544

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cinematix, LLC, a Washington limited liability company; AP INTERNATIONAL, an Indian company; HOME SCREEN ENTERTAINMENT, FZE, a United Arab Emirates limited liability company; HOME SCREEN ENTERTAINMENT, PTE. LTD., an Australian privately held limited liability company,<br><br>        Plaintiffs,<br><br>v.<br><br>EINTHUSAN, a Canadian company; LOTUS FIVE STAR, LTD, A Canadian Company d/b/a Einthusan; LEO INDIA FILMS, LTD., a Canadian company db.a Einthusan ARUN SHANMUGANATHAN, an Individual; DANIESH RAM, an Individual; and JOHN DOES 1-10,<br><br>        Defendants. | Case No. 3:19-cv-02749-EMC<br><br>**DEFENDANT LOTUS FIVE STAR, LTD AND ARUN SHANMUGANATHAN'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS EINTHUSAN, LOTUS FIVE STAR, AND ARUN SHANMUGANATHAN'S AMENDED NOTICE OF SPECIAL APPEARANCE AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(B)(2), INSUFFICIENT SERVICE OF PROCESS PURSUANT TO FRCP 12(B)(5), AND *FORUM NON CONVENIENS***<br><br>Hearing Date: November 7, 2019<br>Time: 9:00 a.m.<br>Ctrm: 5, 17th Floor<br>Before the Hon. Edward M. Chen<br>Trial Date: None set |

I.      **INTRODUCTION**

Neither Arun Shanmuganathan, individually, nor Lotus Five Star, Ltd. ("Lotus Five Star") consented to personal jurisdiction in this court pursuant to the DMCA counter notification dated March 25, 2019.  The court also lacks either general or specific jurisdiction over either Defendant.  Further, Shanmuganathan, a resident of Sri Lanka, has not been properly served. Finally, this case should be dismissed on the grounds of *forum non conveniens*.

II.     **PERSONAL JURISDICTION**

**A. Shanmuganathan Did Not Consent to Personal Jurisdiction as an Individual By Signing a DMCA Counter Notification.**

Plaintiffs claim that Arun Shanmuganathan individually consented to personal jurisdiction because his name appears on a DMCA counter notification sent to Amazon as a result of Plaintiffs' claim regarding allegedly copyright-infringing materials on the Einthusan.com website.  Shanmuganathan's electronic signature appears above the name and address for Einthusan.com.

Shanmuganathan did not consent to this court's jurisdiction by signing the counter notification on behalf of one or more of the other Defendants in this case. As Shanmuganathan stated in his declaration that the counter notifications would have been submitted on behalf of either Lotus Five Star or Leo India Films, Ltd. ("Leo India Films"), depending on when they were sent.[1]  Dkt. 53, p. 41 at ¶ 5.

Shanmuganathan completed the counter notification on behalf of Leo India Films. Plaintiffs offer no arguments as to why this court should ignore general California law and

---

[1] Defendant Lotus Five Star is the previous owner of the domain name, website, and Einthusan brand name, and trademark, all of which it sold to Leo Star India in 2017, and Defendants contend that at the time the notice was sent, Leo India Films was the owner and operator of the Einthusan website to which the notice was directed.  Shanmuganathan Dec. at ¶ 4.

1

find that an individual who signed a document on behalf of a disclosed principal should be held personally to the statements made in that document.  *See Cruz v. United States*, 219 F. Supp. 2d 1027, 1038 (N.D. Cal. 2002) (citing *Filippo Industries, Inc. v. Sun Ins. Co. of New York*, 74 Cal.App.4th 1429, 1443, 88 Cal. Rptr. 2d 881 (1999) ("It is a matter of basic California contract law that where his principal is disclosed an agent cannot be held liable for breach of a contract to which he is not a party.").  Plaintiffs have offered no facts or authority which would permit this court to depart from this general principle.  *See*, *e.g.*, *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984).  ("To apply the alter ego doctrine, the court must determine (1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice.").

**B.  Shanmuganathan Is Not Subject to Personal Jurisdiction In This District.**

As completing the counter notifications on behalf of one or the other of the other Defendants does not impute any consent to jurisdiction found in the notice to him, whether this court has personal jurisdiction over Shanmuganathan, who is a resident of and domiciled in Sri Lanka, must be determined by a traditional analysis. The Plaintiffs' opposition to Defendants' motion to dismiss for lack of personal jurisdiction lumps all of the Defendants together, without acknowledging that they have sued Shanmuganathan as an individual or attempting to explain why he as an individual should be subject to either general or specific jurisdiction in this district.

This court has no basis for general jurisdiction over Shanmuganathan.  Plaintiffs have not alleged any facts which show that Shanmuganathan has contacts substantial enough with California to render him "essentially at home" in this district a requirement for a court to exercise general jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S.

2

Ct. 746, 760 (2014).  For an individual such as Shanmuganathan, the court should look to the place of the individual's domicile.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S. Ct. 2846, 180 L .Ed. 2d 796 (U.S. 2011).  Shanmuganathan is a resident of Sri Lanka.  Dkt. 53, p. 41 at ¶ 2.  He has never resided in California, owned real property in California, had a bank account in California, or owned an interest in a business in California.  *Id.*  He has never travelled to California for any business purpose related to the other Defendants.  *Id.*  This court cannot exercise general jurisdiction over Shanmuganathan.

To determine whether this court has specific jurisdiction over Shanmuganathan the Ninth Circuit's looks to a three-part test.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* Plaintiffs have the burden of establishing the first two prongs of the test.  *Id.*

Shanmuganathan did not on his own behalf engage in any conduct that was expressly aimed at California.  The analysis should stop there.  However, to be thorough, Defendants offer the following two cases, both cited in Defendants motion which Plaintiff did not bother to distinguish, to show that the types of activities that Plaintiffs allege Shanmuganathan participated in do not allow this court to exercise persona jurisdiction over a party, who like Shanmuganathan, did not consent to jurisdiction.

3

In *DFSB Kollective Co. v. Bourne*, a case cited in Defendant's motion that Plaintiffs made no attempt to distinguish in their opposition, the defendant was an individual from Australia who was accused of operating a website that streamed infringing copies of Korean pop songs.  897 F. Supp.2d 871, 876 (N.D. Cal. 2012).  Like the Plaintiffs, DFSB Kollective was a foreign company that decide to bring its case against a foreign defendant in this district, a forum with little—if any—relationship to the case or the parties.

DFSB Kollective claimed the defendant has aimed his infringing conduct at California because of activities (similar to those that Plaintiffs are alleging the Defendants engaged in):  operating commercial and interactive websites "indiscriminately" targeting California residents, where defendant's website had a "high concentration of users in California, and by driving traffic to advertisers who had paid to be included on the website.  *Id.* at 876, 880. The court held that plaintiff did not "expressly aim" the allegedly infringing conduct at California residents, distinguishing it from other cases given that the website did not contain anything specifically linking it to California such as a California-specific privacy policy, a video of a California resident explaining the website's functionality, or advertisements targeted to users based on their location in California.  *Id.* at 876.  *See also Bibiyan v. Marjan TV Network, Ltd.*, No. CV 18-1866-DMG (MRWx), 2019 U.S. Dist. LEXIS 19700(C.D. Cal. Feb. 4, 2019) (court lacked jurisdiction over United Kingdom-based Persian language television network offering website- and mobile-based programming accused of unlawfully copying plaintiff's videos and distributing them to California websites where it had not specifically aimed conduct at California consumers).

Assuming, *arguendo*, that Shanmuganathan individually engaged in any of the conduct alleged in Plaintiffs' complaint, it was not intentionally aimed at California and cannot serve as the basis for specific jurisdiction over Shanmuganathan.  Plaintiffs have

4

not proven that they have met the first two parts of the test for specific jurisdiction in California.  The court should dismiss Plaintiffs' claims against him for lack of personal jurisdiction.

**C. Lotus Five Did Not Consent to Personal Jurisdiction in the March 19, 2019 Counter Notification.**

Plaintiffs claim that Lotus Five Star consented to the counter notification dated March 19, 2019.  In 2017, Lotus Five Star sold the domain name, website, and the Einthusan brand name and trademark to Leo India Films.  Dkt. 53, p. 41 at ¶ 4.  Beginning in 2015, and until the sale, Shanmuganathan worked for Lotus Five Star as a licensing officer procuring licenses for files and evaluating allegations of copyright infringement, for which he submitted DMCA counter notifications as required. *Id.* at ¶ 3.  As part of the agreement between Lotus Five Star and Leo India Films, Shanmuganathan continued to evaluate allegations of copyright infringements and to submit DMCA counter notifications as needed, using the name of the website, Einthusan.com in the electronic signature which he used to signed them.  *Id.* at ¶ 5.

When Shanmuganathan signed the March 19, 2019 counter notification, he did so as an agent of Leo India Films, not Lotus Five Star.  As such, Lotus Five Star has not consented to the jurisdiction of this court.[2]

**D. Lotus Five Star Is Not Subject to Personal Jurisdiction In This District.**

Because Lotus Five Star did not consent to the jurisdiction of this court, the court must look to the same analysis described above as to Shanmuganathan to determine if either specific or general jurisdiction exists.  For similar reasons, the court does not have personal jurisdiction over Lotus Five Star.

---

[2] To the extent that court did find that Lotus Five Star consented to jurisdiction, it should be only as to those specific films listed in the March 25, 2019 counter notification.

The court does not have general jurisdiction over Lotus Five Star.  Lotus Five Star is a Canadian limited liability company with its principal place of business in Toronto, Canada. Dkt. 53, p. 36 at ¶ 3.  As with an individual, to show substantial contacts with a forum state, there must be substantial contacts that render a defendant "essentially at home" there. *Daimler AG*, 134 S. Ct. at 760.   For a corporate defendant, this is the state in which it is incorporated or has its principal place of business.  *Id.*  This court cannot exercise general jurisdiction over Lotus Five Star.

Like Shanmuganathan individually, Lotus Five Star does not engage in the kind of conduct in California that would subject it to specific jurisdiction in this district, and did not own or operate the Einthusan websites at the time Plaintiffs claim the infringement occurred. *See Schwarzenegger*, 374 F.3d at 802.

Lotus Five Star is in a situation similar to the defendants in *Bibyan v. Marjan TV Network, Ltd.*, No. CV 18-1866-DMG (MRWx), 2019 U.S. Dist. LEXIS 19700(C.D. Cal. Feb. 4, 2019). Plaintiff owned the copyrights to twenty-nine videos about music from Iranian culture, and claimed that the defendant infringed the copyrights by broadcasting them on its television channels and website.  *Id.*, at *2-3.  Defendant was a television network in the United Kingdom that created and broadcast Persian-language entertainment. *Id.*, at *3. Defendant conducted its business operations in the United Kingdom and its film crews were based in the United Kingdom. *Id.* Its programming was delivered through a satellite transmission directed to the Middle East, accessed through satellite dishes in the Middle East and parts of Europe and Asia, but was not accessible to or distribute in the United States. *Id.*, at *4. The defendant's content was also accessible through a website and mobile application.  *Id.*, at *4. The website and mobile application did not generate any income for the defendant from or feature advertising directed to people in the United States.  *Id.*  The

court dismissed the case for lack of personal jurisdiction because the defendant had not expressly aimed its conduct at California consumers. *Id.*, at *10.

While still owner of the website, Lotus Five Star did not advertise its service anywhere or aim the Einthusan websites[3] at the California market.  Dkt. 53, p. 37 at ¶ 7. The services where Lotus Five Star hosted the websites were in Canada. *Id.* Plaintiffs have not identified any specific third-party advertisements that were targeted to users in this district, or elsewhere in California.  Lotus Five Star did not have control or knowledge of any third-party advertisements that appeared on the websites, as it sold the space to brokers that placed the advertising.  *Id.*

Plaintiffs have not proven that as to Lotus Five Star it has met the first two parts of the test for specific jurisdiction in California.  The court should dismiss Plaintiffs' claims against Lotus Five Star for lack of personal jurisdiction.

**E.  The Exercise of Personal Jurisdiction Would Not Be Reasonable.**

Even if the court found that the first two prongs of the test for specific jurisdiction over Shanmuganathan and Lotus Five Star had been met, because jurisdiction would not be reasonable, it should decline to exercise it here.

Courts evaluate multiple factors in determining the reasonableness of personal jurisdiction.  Defendants covered these factors in its motion.  *See* Dkt. 53 at 10-12. One factor in particular, the forum state's interest in adjudicating the dispute, weighs heavily against jurisdiction in California. As stated by the Court in *Doe v. Geller*:

the Northern District of California could assert jurisdiction over every single

---

[3] Plaintiffs attached a declaration from Caleb Hatch to their opposition.  At paragraph 7, Mr. Hatch claims that he discovered information that the domain name einthusan.tv is registered with Dynadot.com, a California company.  A closer look at Exhibit D to Mr. Hatch's declaration reveals that the domain name that he searched for was "*ent*husan.tv," not "*eint*husan.tv." Plaintiffs intend to present objections to Mr. Hatch's declaration in a separate submission to the Court.

takedown notice ever sent to YouTube or any other company in Silicon Valley. Citizens around the world—from Indonesia to Italy, Suriname to Siberia—could all be haled into court in the San Francisco Bay area, California, USA, for sending off a fax claiming that a video clip is infringing. Federal courts sitting in California could assert personal jurisdiction over foreign defendants in wholly foreign disputes. . . . Such broad jurisdiction, premised solely on the happenstance that many internet companies that are not even parties to § 512(f) litigation have offices in Silicon Valley, is unreasonable. The Northern District of California is not an international court of internet law.

*Doe v. Geller*, 533 F. Supp. 2d 996, 1009 (N.D. Cal. 2008).   The *Geller* court's concerns are mirrored exactly here, and weighs heavily against the court exercising jurisdiction in this case.

## III.   Service of Process Was Insufficient

### A. Improper Service Not Cured by Filing Amended Complaint

Plaintiffs seem to suggest that because they served an amended complaint after Defendants made their special appearance for the purpose of contesting personal jurisdiction, and Defendants' attorneys received an amended complaint via the Court's ECF system, the original defects in service have been waived.  Plaintiffs cite *Emp. Painters' Tr. v. Ethan Enters.* for the proposition that "an amended complaint in this case qualifies as a 'pleading subsequent to the original complaint,' thus allowing it to be served an any manner prescribed by [Federal Rule of Civil Procedure 5(b)]."  480 F.3d 993, 999 (9th Cir. 2007). Plaintiffs' cherry-picked quote ignores the court's statement that "an amended complaint can often be served in the same manner as any other pleading if the original complaint is properly served and the defendants appeared in the first instance."  *Id.* at 995-96.  Nor does the other case Plaintiffs cite support their contention.  *Walters* involved personal jurisdiction, not service of process, and there was no question that service of the original complaint was proper.  *Walters v. Boyd*, 187 F. Supp. 479, 480-81 (S.D. Tex. 1960) ("The first amended original complaint was served on Blackmer personally in New York.").  Serving an amended

8

complaint under Federal Rule of Civil Procedure 5(b) under allowable methods did not cure the original defect in service under Federal Rule of Civil Procedure 4 in this case.   If Plaintiffs' argument had merit, it would be impossible to challenge service of process under Rule 4, as all a plaintiff would have to do is serve an amended complaint under Rule 5.

### B.  Service on Shanmuganathan was Insufficient

Shanmuganathan is a resident of Sri Lanka, not Canada. Plaintiffs' opposition ignores this fact completely.  Dkt. 53, p. 41 at ¶ 2.  As such, Plaintiffs must comply with the Hague Convention as it applies to Sri Lanka, not Canada with respect to Shanmuganathan. Sri Lanka requires service through a central authority. Sri Lanka has objected to all alternative methods of service under Articles 10(a) and 10(c) of the Hague Convention, making certain forms of service, such as postal mail improper.  Courts have ruled that under Article 10(a), email service is improper under the Hague Convention.  *Elobied v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014).  As one court has stated in precluding service by email under Article 10(a), "[b]ecause email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent."  *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988)).  This court should dismiss the individual claims against Shanmuganathan for insufficient service of process.

### IV.    *Forum Non Conveniens*

Defendants have demonstrated that there is an adequate alternate forum in Canada. Plaintiffs have not yet demonstrated that all parties could be sued in this forum. None of the parties in this case – Plaintiffs or Defendants – reside in the Northern District of California. All of the factors used to balance the public and private factors for dismissal due to *forum*

4811-4350-5834v.2

1    *non conveniens* are in Defendants' favor.

2         As to the private factors, Plaintiffs have not identified a single party or witness that

3    resides in the district; shown the forum is convenient for any of the litigants; identified  any

4    of physical evidence or other sources of proof that are located in the forum; demonstrated

5    that unwilling witnesses, who by and large will be in foreign countries, can be compelled to

6    testify here; or, addressed the cost of bringing all of the witnesses in this case from outside

7    of the district.

8         The public factors are addresses in the concerns are summed up by one line from

9    the *Geller* court's opinion quoted above: "The Northern District of California is not an

10   international court of internet law."  533 F. Supp. 2d at 1009.  Plaintiffs' argument may have

11   been more convincing if they had brought suit in in Washington State - where the one entity

12   that resides in the United States is located. Instead they chose California, a state with

13   absolutely no connection to the parties or their dispute. Accordingly, the court should

14   dismiss this case for *forum non conveniens*.

15   **IV.    CONCLUSION**

16        For all of the foregoing reasons, it is respectfully requested that the Court grant the

17   Defendants' Motion to Dismiss and dismiss AP International's First Amended Complaint

18   with respect to Defendants Lotus Five Star and Shanmuganathan.

10

1  Respectfully submitted this 21st day of October, 2019.

2

3                              By: */s/ Steven N. Williams*
                               Lewis E. Hudnell, III (CASBN 218736)
4                              Hudnell Law Group P.C.
                               800 W. El Camino Real Suite 180
5                              Mountain View, California 94040
                               T: 650.564.7720
6                              F: 347.772.3034
                               E: lewis@hudnelllaw.com
7

8                              Steven N. Williams *(pro hac vice)*
                               Texas State Bar No. 21577625
9                              Email:  swilliams@munsch.com
                               Winston O. Huff *(pro hac vice)*
10                             Texas State Bar No. 24068745
                               Email:  whuff@munsch.com
11                             William Zac Duffy *(pro hac vice)*
                               Texas State Bar No. 24059697
12                             Email:  zduffy@munsch.com

13
                               MUNSCH HARDT KOPF & HARR, P.C.
14                             500 N. Akard Street, Suite 3800
                               Dallas, TX 75201
15                             Telephone: (214) 855-7500
                               Facsimile: (214) 855-7584
16

17                             **ATTORNEY FOR DEFENDANTS**

18

19                         <u>**CERTIFICATE OF SERVICE**</u>

20        I hereby certify that on this 21st day of October, 2019, a true and correct copy of the

21  foregoing document has been served on the following counsel of record via the Court's ECF

22  system:

23

24        George H. Brunt *(georgeB@leehayes.com)*
          Lee & Hayes, P.C.
25        601 W. Riverside Ave, Suite 1400
          Spokane, Washington 99201
26

27        *Attorneys for Plaintiffs*
                                    */s/ Steven N. Williams*
28                                  Steven N. Williams

                                       11

4811-4350-5834v.2